Johnny-lee Preston Burk #AB0145
Anchorage Corr. Complex- East
1400 E. 4th Avenue
Anchorage, AK. 99501



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

APR 05 2021

CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

UNITED STATES OF AMERICA,

        Plaintiff,

   Vs.

JOHNNYLEE PRESTON BURK,

        Defendant.

Case #3:19-CV-00117-JMK-MMS

## BURK'S MOTION TO DISMISS INDICTMENT FOR PRETEXTUAL BAD-FAITH

Comes now, the defendant, Johnny-lee Preston Burk, by Pro se filing, and hereby moves this court to dismiss the indictment in the above captioned matter for the Pretextual Bad-Faith of multiple party's involved in the prosecution of this case, including Magistrate Scoble. Burk makes this filing pursuant to Fed. R. Crim. P. 12(b).

### HISTORICAL FACTS

On July 2nd, 2019, the defendant remanded at the Cordova Center in Anchorage, Alaska in order to finish the last few days of his sentence in Case #3:15-CV-00088-SLG.

(1)

After Burk remanded to the Cordova Center, he immediately began recieving unwanted attention from one of the female staff who was working on the federal floor, Akenese Motoa, who was also known as "Brenda"; where she acted extremely flirty to Burk, talking completely different to him than other inmates and making him feel like she was trying to per-sue an unprofessional relationship (with Burk).

Even though Burk could tell that Ms. Motoa was acting in such a way, he decided to simply ignore her be-havior because he felt sympathy for her feeling the need to use her job in order to find a relationship. Other inmates on the fed floor also noticed Ms. Motoa's behavior and Burk recieved comments from some of them, one of them being William Riley-Jennings, who had been present during Ms. Motoa's advances towards Burk, and witnessed it first hand.

On July 24ᵀᴴ, 2019, after Burk had returned from a "job search", he had went to his room (room #108), at which

(2)

time Burk apparently had blacked-out from smoking "spice", which he has no recollection of, and came back to reality while sitting on the toilet in the bathroom. When Burk "came-to" he heard Ms. Motoa calling his name for count and knowing that it was a "visual count" and that it was required for her to see his person, Burk then attempted to comply by getting off the toilet and opening the door so she could see him.

When Burk opened the door, Ms. Motoa, who was standing outside the door by herself, began giggling at Burk when she seen him and realized that he was extremely dis-oriented. When Burk realized that he'd been "caught" smoking, he immediately became "frozen" or "stuck" in place, a common side effect of smoking spice when a person becomes fearful or tense, especially in anticipation. After Burk became frozen and stuck in place, Ms. Motoa then came towards Burk's person and began pressing her body onto his in a "fair play" type of manner while biting her lip and rubbing her hand on his

( 3 )

crotch area of his pants, which began to trigger his PTSD from being abused as a child, making him feel smothered in the intense internalized fear and panic that he has always associated with being abused.

When Burk did'nt move or object to Ms. Mutoa's actions due to him still being "stuck" in place, Ms. Mutoa then, where she must likely believed that he was in fact consenting to her actions due to his non-respone, slid her hand behind his belt and down his pants, grabbing his privates in a sexual manner. Immediately, upon feeling the skin on skin contact from her hand touching him directly, Burk snapped out of being "stuck" and frozen in place due to the shock and suprise of feeling her touch him, which also amplified his feelings caused by his PTSD and made them more intense.

When Burk was able to actually move and speak again, he then squared off with her defensively and told her "Quit touching me!" and "Get off me!", which he yelled in an ass-

(4)

ertive manner. Ms. Motoa merely sat there without moving or showing any sign of withdrawing from Burk's demand for her to stop. Because Burk felt an overwhelmed sense of panic and fear, that was the same feelings he felt as a child being abused, he began at this point to defend himself by fighting to get her off him. Burk stopped once he was able to get her off of him, and he no longer felt she was a threat.

After his altercation with Ms. Motoa, Burk began feeling like other staff may respond and attack him which he associates with his undocumented PTSD caused by the Ruby Ridge incident where his family's friends (the weaver family) was killed by Federal LEO's when Burk was an 8 year old and had a strong emotional connection with the Weaver's. (see affidavit attached at doc #173). Burk then, without actually hitting him, had an altercation with F.A., another Geo employee at Cordova Center and also with William Riley-Jennings. After the situation calmed down

(5)

Burk was arrested by APD and taken to Anchorage Correctional Complex-East on state misdemeanor charges.

　　　While being transported to Fed' Court on Case #3:15-CV-00088-SLG-DMS-3 in late September, 2019, for a time and accounting issue, Burk, after working himself up enough to be open about Ms. Motoa's actions, attempted to make a PREA claim to one of the U.S. Marshals that was transporting him to court about what had happened. The U.S. Marshal, who he attempted to report his PREA claim to, had Burk explain the general details as to what he was trying to report, at which time he told Burk that he would notify his supervisor and begin an investigation. Burk never has heard anything about this report and, due to being beat and ignored when he tried to report abuse as a kid, started having issues with his PTSD and mental health regarding being ignored (when trying to report abuse).

　　　On October 16, 2019, Burk was indicted federally

(6)

for two counts of assault because of that incident and awhile later again attempted to make a PREA report to one of the U.S. Marshals transporting him to fed court. Again Burk was told that the U.S. Marshal he'd talked to would tell his supervisor and then begin an investigation, and again, nothing happened. As a result Burk continued to ride a mental rollercoaster due to being ignored and his PTSD as a kid. (see doc #3 in 3:21-CV-00043-TMB).

After not being responded to for awhile longer, Burk then decided to write a letter asking for help from one of the U.S. Marshals who he knew her full name, and because he believed she would care about what had happened and be concerned enough to take his PREA report, attempted to ask her to help him in making one. However, Burk was again ignored. In March, 2020, Burk was able to convince his attorney at the time, Cristina Wiedner, to make a PREA report with the U.S. mar-

shals, which again led to nothing being done.

Meanwhile, after multiple people returning to Acc-East from Cordova Center, Burk began recieving a significant amount of reports that Ms. Motoa had been placed on leave or suspension from working at Cordova Center by Geo due to her acts of misconduct, which happened subsequent to the incident with Mr. Burk. (see doc#158). Burk began asking counsel, Cristina Weidner, to attempt to obtain any evidence on Ms. Motoa's misconduct at which time she emailed the AUSA's asking for the personell files of both alleged victims. The government responded that it was not in possession of the requested files (see doc#75-2) and Ms. Weidner then filed a motion to compel (doc#75), not only to obtain evidence of A.M.'s misconduct, but also to discover if the alleged victims had in fact been working pursuant to a contract as "contract staff" to see if there was or wasn't subject-matter jurisdiction (see doc#35)..

(8)

On July 7TH, 2020, Burk had a representation hearing before Magistrate Scoble regarding him and Counsel Cynthia Franklin's breakdown in communication. During the hearing, Burk and Scoble had an One on One conversation where Burk explained to Magistrate Scoble the issues between him and Ms. Franklin, and in doing so, explained what had occurred in the incident in question here and how Ms. Motoa had sexually acosted his person, triggering his PTSD. At this time, Magistrate Scoble reacted as if he was upset with the issues in the case and the possible prosecution of Burk by making obvious sounds of displeasure.

Prior to this case and Scoble being a Magistrate, he had represented, as a lawyer, multiple people who were providing information about Burk and others during the investigation of the Karjala matter and had an emotional and personal investment and involvement into the prosecution of Burk and others in that matter

(9)

which was a highly publicized matter and a big deal to the legal community. Unfortunately for Scoble and the prosecution team, Burk was never prosecuted and all-edgedly "got away with it", leaving alot of people who were involved resentful against Burk (see doc #45). As a member of the prosecution team, or a supporting party, Scoble had to recuse himself from being a magistrate in that case (see doc #214 at 3:17-cv-00063-TMB-DMS).

After Burk explained to Scoble what had in fact occured on July 24TH, 2019 during the incident and revealed the issues with the case, along with going into further detail at his bail hearing (see doc #130), and knowing that Burk had raised concerns of further misconduct by Akenese Mutoa (A.M.) as well as his prior claim of there being a jurisdiction issue (doc. #35), Scoble prevented Burk from discovering any evidence to support those issues by denying his motion to compel (doc #131) and even going as

(10)

far as barring Burk from being able to object to a higher

authority by placing an order that he was not able to object

to his decisions made at doc# 131 (see doc# 131) effectively

preventing Burk from getting relief from the District Court

Judge where he would challenge that ruling.

Recently, in the last couple of months, William

Riley-Jennings, a witness who was directly involved in the

incident in question here, and also a material witness

to Ms. Mutoa's inappropriate behavior leading up to the incident,

was killed by APD in an officer related shooting.

## LEGAL ARGUEMENT

1.) Magistrate Scoble, the AUSA's involved in the

case, and the U.S. Marshals, have all been taking steps

in order to prevent Burk from obtaining evidence for him

to prepare an intelligent defense, amounting to a conspiracy

to give the government a tactical advantage;

A.) Magistrate Scoble has intentionally and

purposefully prevented Burk from obtaining discovery that could help him assert his innocence and prepare an intelligent defense;

Prior to scobles rulings made in doc#131 he was fully aware of Burk's assertions that A.) there was no subject-matter jurisdiction to prosecute Burk where the alleged victims had not completed the steps to become "contract staff" as required (see doc#35); and, B.) that Akenese Motoa had sexually acosted Burk's person, triggering his PTSD from being sexually abused as a child and that there had been accusations of further misconduct on her part subsequent to the incident here (see hearings held at doc.#123 and doc.#130).

This is not a situation where scoble was ignorant, at least not in the knowledge that the issues mentioned as above existed, and that evidence regarding those issues could be found in the personell files. In fact, where Burk

(12)

is unable to review any evidence relevant to his defense, he is unable to seek out and locate witnesses involved in the allegations of misconduct against Ms. Motoa, and any other evidence that would provide Burk with leads on evidence or witnesses in order to form an actual defense.

Scoble knows all of this, as can be presumed from his extreme steps to prevent the discovery of the evidence in question (see Sugendorf-Teal v. County of Rensselaer, 100 F.3d 270, 275-76 - 2nd Cir., 1996; and also, Mc Cravy-El v. Shaw, 992 F.2d 809, 812-13 - 8th Cir., 1993), establishing that he is acting to help the government gain a tactical advantage by preventing Burk's ability to defend himself. Scoble's motive to abuse his power in such a way is obvious here where he had a prior interest in the prosecution of Burk, which failed. (see doc.# 152) Furthermore, this is a situation where Scoble is aware of what Burk need's in his seeking of the personell records as previously explained, Scoble was aware Burk was raising is-

( 13 )
Case 3:19-cr-00117-JMK-MMS   Document 186   Filed 04/05/21   Page 13 of 27

sues which related to the personell files (i.e. allegations of misconduct, or subject-matter jurisdiction).

A magistrate judge who had reason to deny a motion to compel specific discovery being sought by a defendant, when the judge knows that evidence may be material to the defense and the issues being raised, would still, at the least, conduct an in-camera review to see for himself if the evidence is material or not. At least, that's what can be expected from a impartial judge who's intrest is in protecting a defendants DUE PROCESS RIGHTS and keeping the balance fair and true. However, that's not the case here where scoble has went above and beyond in preventing Burk from obtaining discovery which is material, as is known from the record.

Burk raises the question, when has a magistrate judge ever prevented a defendant from filing objections to a ruling, as scoble did in doc #131? This in itself shows the

agenda of Scoble, where if Burk was not entitled to the evidence in question, why would he prevent him from seeking relief from a higher judge? What is scoble willing to go above and beyond normal procedures for? The answer here is clear as day: Scoble has been doing all that he can to prevent Burk's preperation of an intelligent defense, for the main purpose of ensuring his prosecution by giving the Government a tactical advantage by stopping Burk from proving his innocence, as a way to make up for the failed prosecution of Burk in the karjala issue, a case scoble was apart of and had an intrest in. (see Bennett v. Goord, 343 F.3d 133, 139)

B.) The actions of the AUSA's, Vandegraw and Klugman, in failing to disclose requested discovery, are tactic's being used by them to tamper with the discovery of favorable evidence and prevent Burk's intelligent defense; where the government wrote a letter to former counsel

(15)

claiming it wasn't in possession of the alleged victims personell files (see doc #75-2), was merely a way for the government to play stupid and act like it didn't have access to the files so it wouldn't have to produce them. When it is required that the government learn of and provide any impeachment or exculpatory evidence known to other government agency's or agents involved in the investigation (see Kyles V. Whitley, 514 U.S. 419, 437-1995; and Youngblood V. W. Va., 547 U.S. 867, 869-70, 2006), and they are avoiding doing so when BOP has possession of the files in question, it can be presumed that it's doing so to intentionally prevent Burk's discovery of favorable evidence. (see Sugendorf-Teal V. County of Rensselaer, 100 F.3d 270, 275-76-2nd Civ., 1996; and McCrary-El V. Shaw, 992 F.2d 809, 812-13 - 8th Civ., 1993).

It is common knowledge that Ms. Mutoa was placed under investigation for some form of misconduct, when an

(16)

the case here where Burk has repeatively attempted to bring it to the U.S. Marshals attentions that Ms. Mutoa had sexually acosted his person, triggering his PTSD and forcing him to defend himself. Any investigation by the U.S. Marshals into Burk's claim's would have discovered such evidence, including witnesses, and any other evidence no longer able to be found because of the cases being stale and no longer fresh.

evidence hearing is held this will be established for the court. The governments actions here amount to tampering with the discovery of evidence in order to gain a tactical advantage in this case; and is "bad-faith".

6.) The U.S. Marshals refusal to take Burk's PREA claim a total of 4 times is their effort to prevent the discovery of any evidence that would undermine the prosecution in this case;

Each and every time that Burk attempted to make a PREA claim against Ms. Mutoa for her actions, he explained why he was making that PREA claim and that it involved this case (see doc #3 in civil case# 3:21-cv-00043-TMB), however, the U.S. Marshals refused to investigate that claim where any evidence discovered is likely to prove Burk's innocence in his criminal case, it can be presumed that the U.S. Marshals avoided any investigation in order to prevent such discovery and the

(17)

upsetting of the Governments case. As the U.S. Marshals had a duty to investigate Burk's PREA claim, it amounts to outrageous conduct here where they have done so for the purpose of tampering with the discovery of potential evidence thats favorable to Burk as such acts prevent Burk from preparing an intelligent defense (see Drejza V. Vaccaro, 650 A.2d 1308).

**2.)** All actions by Magistrate Scoble, the Government and the U.S. Marshals amount to a conspiracy to interfere with the discovery of favorable evidence and is a crime under 18 U.S.C.S. § 242 and § 371;

A.) Where the actions of all above mentioned parties are to accomplish the same objective, to prevent Burk from obtaining favorable evidence, those parties are in a conspiracy to do so;

Even though Burk is unable to show with evidence at this point that those parties are in communication and

(18)

in agreement formally, a conspiracy can still be presumed here where all of them have been working in concerted action for accomplishment of a single purpose. (see U.S. V. Mendez, 496 F.2d 128-9ᵀᴴ Cir., 1974; American Tobacco Co., V. U.S. 328 u.s. 781 - 1946; and Pinkerton V. U.S., 328 u.s. 640). Here all the parties in question have made steps to the single purpose of preventing Burk from obtaining evidence favorable to his case.

      B.) The actions of the parties mentioned above, where they are intended to impair, obstruct and defeat the lawful functions of the court and the government agency's they work for, are criminal.

      In Haas V. Henkel, 30 S. Ct. 249-1909, the supreme court stated that the statue [18 U.S.C.S. § 371] is broad enough in it's terms to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful functions of any department of government (also see; U.S. V. Walter, 44 S. Ct.

10). Even though Burk is the intended target of these parties actions and overt acts to prevent the discovery of evidence to assert his innocence, consequently is also the impairment of the legal functions of this court and the D.O.J. (including the U.S.M.S.) when it effectively prevents an authentic investigation and interferes with the duty's of those agencies (see U.S. V. Ramey, 336 F.2d 512 - 4th Civ., 1964).

C.) Even if such acts were not a crime, the U.S. Marshals actions in avoiding an investigation that could reveal evidence favorable to Burk amounts to interference with access to the courts and tampering with evidence; violating DUE PROCESS;

When officers take steps to conceal the true facts of a crime, the behavior is considered interference with a defendants right to court access and may be actionable as a deprivation of constitutional rights (see Christopher v. Harbury, 536 U.S. 403, 414 - 2002; and also, Small v. City of New York, 274 F.Supp.2d 271, 278-279, E.D.N.Y. - 2003). This is exactly

(20)

what has happened here, when Burk, in seeking help, even prior to his being federally indicted on October 16TH, 2019, had attempted to bring Ms. Motoa's actions (sexual misconduct) to the attention of the U.S. Marshals (see doc #3 in civil case #3:21-CV-00043-TMB) after he was told by DOC staff that being a federal detainee, also at the time of the incident, he was required to make such reports to the U.S.M.S., not D.O.C.

It's highly disturbing to think how, in the event that the U.S. Marshal Service would have actually responded to Burk's report, and performed an investigation into his claims of abuse, prior to his being indicted in this matter, it would have had the opportunity to discover evidence of what actually happened, and everything that led up to the incident (i.e., Ms. Motoa's unprofessional behaviors towards Burk), and Burk's innocence. Instead, where Burk is a targeted person from other situations (3:17-cv-00063-TMB-DMS), and it is obviously a priority to prosecute Burk, all parties involved have taken

(21)

significant steps to prevent Burk from obtaining evidence that is potentially favorable to his defense and proof of his innocence. The U.S. Marshals have done this by <u>intentionally</u> (emphasis added) ignoring Burk's claim, not just once, but <u>4</u> times total (see doc.# <u>3</u> in 3:21-cv-00043-TMB). This can only be seen as intentionally tampering with the discovery of evidence by the U.S. Marshals for the purpose of giving the Government a tactical advantage.

Sadly, little did the U.S. Marshals know, by doing what they did in ignoring Burk's report in order to help the Government preserve it's case against him, they have caused Burk to re-live the same scenario of abuse he went through as a kid where he had been sexually abused and ignored when he tried to report that abuse, as well as punished also. Here, Burk was again sexually abused and ignored and punished just as when he was a child. Suffering from PTSD has caused Burk to have to endure a higher amount of distress

( 22 )

than a normal person without any history of ever being abused.

   D.) Burk has established "Bad-faith" and a sig-
nificant amount of prejudice here to require dismissal;

   It is well known that when a defendant has shown
either bad-faith on behalf of the government, or prejudice oc-
curing as a result of their actions (e.g. see; U.S. v. Doyal,
868 F. 2d 424, 429-30 - 11TH Civ. 1989). Here, the defendant
can make a showing of bad-faith on the governments part,
and actual prejudice. All parties involved in the conspiracy
here, to prevent Burk from obtaining favorable evidence in order
to ensure his conviction, have taken steps to deny Burk's DUE
PROCESS PROTECTIONS in order to gain a tactical advantage,
which cements bad-faith into the case (see U.S. v. Rein, 848
F. 2d 777 - 7TH Civ.).

   Where it is self-established that denying the discov-
ery of favorable evidence to a defendant is prejudicial, such has
occured here generally, the U.S. Marshals have also caused

(23)

irreprible harm to Burk's ability to prepare an intelligent defense where a material witness, William Riley-Jennings, who was not only personally involved in the alleged incident on July 24TH, 2019, but was also the main and most valuable witness to Akenese Motoa's inappropriate behavior leading up to the incident, is no longer available where he was recently killed in an officer related shooting by APD.

Had the U.S. Marshals not decided to ignore Burk when he had first told them, or even when he tried again later, an investigation being done by them would have produced witnesses and evidence to support Burk's claim that he was the victim, and one of the witnesses would have been William Riley-Jennings. But now, where not only the U.S. Marshals, but all parties involved in this conspiracy to block his preperation of a defense, have been successful, Burk will never be able to recover from the prejudice and have the ability to defend himself.

Furthermore, had Burk's claims been investigated, producing evidence and witnesses to support his defense, as well as him being allowed to obtain the evidence he was seeking regarding Ms. Motoa's other acts of misconduct, he would have obviously went to trial at that time instead of being left to grasp at straws in order to defend himself.

<u>CONCLUSION</u>

Because all parties here have put Burk at an extreme disadvantage in order to intentionally hinder his preperation of an intelligent defense, this case must now be dismissed with prejudice in order to uphold the integrity of Justice.

Respectfully submitted on this 30<u>TH</u> day of March, 2021, by,

2.°°
neopost℠
04/02/2021
US POSTAGE $002.00°
FIRST-CLASS MAIL

ZIP 99501
041L11253886

Johnny-Lee Fresium Buvic - 480115
Anchorage Correctional complex-East
1400 E-4th Avenue
Anchorage, AK. 99501

Clerk of Court
Alaska Federal District Court
222 W. 7th Ave, #2
Anchorage, Alaska. 99513